```
                              FILED
                     CLERK, U.S. DISTRICT COURT

                            12/20/2024

                     CENTRAL DISTRICT OF CALIFORNIA
                     BY: _____ASI_____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2024 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>WEIJUN ZHENG,<br>    aka "Sonic,"<br>HEXI WANG,<br>JIN LIU,<br>    aka "Mark,"<br>DONG LIN,<br>    aka "Liam,"<br>DANIEL ACOSTA HOFFMAN,<br>    aka "Slinks,"<br>JESSE JAMES ROSALES,<br>ANDY ESTUARDO CASTILLO PEREZ,<br>MARCK ANTHONY GOMEZ, and<br>GALVIN BIAO LIUFU,<br><br>          Defendants. | CR No. 2:24-cr-00761-PA<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 549: Breaking Customs Seals; 18 U.S.C. § 545 Smuggling; 18 U.S.C. §§ 982 and 545: Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1. The San Pedro Bay Port Complex, which is comprised of the Ports of Los Angeles and Long Beach (the "Port of Los Angeles"), was the busiest cargo container port in the Western Hemisphere.  For example, in 2023, the Port of Los Angeles handled approximately 8.6 million Twenty-Foot equivalent units of cargo capacity, the most in the nation, with over $292 billion in estimated trade value during the year.

2. The United States had established an inspection process to protect vital national security interests and otherwise ensure that goods are properly admitted into the United States.  Among other things, the law required entities or persons importing good into the United States to make available for inspection any goods they sought to import into the United States.  Importers were also required to ensure that any cargo containers carrying their goods were securely locked prior to inspection by CBP.

3. The United States Department of Homeland Security, United States Customs and Border Protection ("CBP") was the government agency responsible for inspecting imports.  To execute its duties at the Port of Los Angeles, CBP would search containers that CBP selected for closer inspection.  Once a cargo container was selected for inspection, the importer of the container was required to arrange for transportation of the container from the Port of Los Angeles to a designated government inspection facility.  During such

transportation, cargo containers were required to be secured with bolt security seals until reaching the designated inspection facility.

4. Defendant WEIJUN ZHENG, also known as ("aka") "Sonic," controlled multiple logistics companies that operated in the Central District of California. ZHENG also controlled and/or managed one or more of the warehouses used by the conspirators to store, conceal, and sell contraband smuggled into the United States from China, including a warehouse located at 1365 Darius Court, in the City of Industry, California (the "Darius Court Contraband Warehouse").

5. Defendant HEXI WANG was the manager of K&P International Logistics LLC, a company that hired commercial truckers to transport shipping containers from the Port of Los Angeles. Among other things, defendant WANG controlled and operated a warehouse located at 16720 Chestnut Street, in the City of Industry, California, which the co-conspirators used to store, conceal, and sell contraband smuggled into the United States from China (the "Chestnut Contraband Warehouse").

6. Defendant JIN LIU, aka "Mark," owned K&P International Logistics LLC and assisted defendant WANG operate the business out of the Chestnut Contraband Warehouse. Among other things, defendant LIU managed the finances of the Chestnut Contraband Warehouse and issued payments to truck drivers who transported shipping containers containing contraband smuggled into the United States.

7. Defendant DONG LIN, aka "Liam," controlled and operated the Darius Court Contraband Warehouse, together with defendant ZHENG.

8. Defendants DANIEL ACOSTA HOFFMAN, aka "Slinks," and JESSE JAMES ROSALES would help coordinate the transportation of the

shipping containers containing contraband from the Port of Los Angeles to warehouses controlled by the co-conspirators, including the Darius Court Contraband Warehouse and Chestnut Contraband Warehouse.

9. Defendant ANDY ESTUARDO CASTILLO PEREZ was a driver for M4 Transportation Inc., a company which coordinated the movement of shipping containers from the Port of Los Angeles, including large shipments of contraband the co-conspirators smuggled into the United States from China.

10. Defendant MARCK GOMEZ was the owner and operator of Fannum Trucks LLC, a company which coordinated the movement of shipping containers from the Port of Los Angeles, including large shipments of contraband the co-conspirators smuggled into the United States from China.

11. Defendant GALVIN BIAO LIUFU worked at the Chestnut Contraband Warehouse and helped direct the transportation of shipping containers containing contraband to warehouses controlled by the co-conspirators, including the Chestnut Contraband Warehouse.

B.  OBJECTS OF THE CONSPIRACY

Beginning on an unknown date, but no later than August 15, 2023, and continuing until at least on or about June 25, 2024, defendants ZHENG, WANG, LIU, LIN, HOFFMAN, ROSALES, CASTILLO PEREZ, GOMEZ, and LIUFU, and others known and unknown to the Grand Jury, knowingly conspired and agreed with each other to:

12. smuggle goods into the United States, in violation of Title 18, United States Code, Section 545; and

13. without authority, willfully remove customs seals placed upon vessels, vehicles, and packages containing merchandise in

1 customs custody, in violation of Title 18, United States Code,
2 Section 549.
3 C.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
4      ACCOMPLISHED
5      The objects of the conspiracy were to be accomplished in
6 substance as follows:
7      14.  Co-conspirators known and unknown to the Grand Jury would
8 coordinate the shipment of tens of millions of dollars of counterfeit
9 and other illegal goods from China to the Port of Los Angeles.
10     15.  Defendants ZHENG, WANG, LIU, LIUFU, and LIN, would maintain
11 and/or operate warehouses to store, conceal, and sell large amounts
12 of contraband goods that were illegally imported into the United
13 States.
14     16.  When containers containing counterfeit and/or other
15 contraband goods were selected by CBP for inspection, defendants
16 ZHENG, WANG, LIU, LIUFU, and ROSALES, would hire commercial truck
17 drivers, including GOMEZ and CASTILLO PEREZ, to transport the
18 contraband containers from the Port of Los Angeles to locations
19 controlled by the co-conspirators, including warehouses controlled
20 and/or managed by defendants ZHENG, WANG, LIU, LIN, and LIUFU, so
21 that contraband could be removed from the containers before CBP
22 inspection.
23     17.  At locations controlled by the co-conspirators, co-
24 conspirators known and unknown to the Grand Jury would break the
25 security seals on shipping containers and remove contraband from the
26 containers.
27     18.  After removing the contraband goods from the containers,
28 co-conspirators known and unknown to the Grand jury would affix

counterfeit security seals onto the containers to conceal that cargo had been removed from the containers.

19. Defendants ZHENG, WANG, LIU, LIUFU, and ROSALES would direct various co-conspirators, including defendants GOMEZ and CASTILLO PEREZ, to transport the containers, after they had been emptied of much of their original cargo and re-secured with counterfeit seals, to locations authorized by CBP for the remaining cargo to be presented to CBP for inspection.

20. Defendants ZHENG, WANG, LIU, LIUFU, and ROSALES would pay co-conspirators, including defendants GOMEZ and CASTILLO PEREZ, fees that were substantially above normal trucking fees to transport the contraband shipping containers.

D.  OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants ZHENG, WANG, LIU, LIN, HOFFMAN, ROSALES, CASTILLO PEREZ, GOMEZ, and LIUFU, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:  On August 18, 2023, in text messages, defendant ROSALES told a co-conspirator ("Co-Conspirator 1") that a cargo container needed to "come back to Hexys to unload then back to the port" and asked the co-conspirator to send him "Hexys addy."

Overt Act No. 2:  On August 18, 2023, in response to the text message referenced in Overt Act No. 1, Co-Conspirator 1 sent a text message to defendant ROSALES containing the address for the Chestnut Contraband Warehouse: "16720 E. Chestnut St."

Overt Act No. 3:  On August 24, 2023, defendant ZHENG

6

instructed defendant ROSALES to pick up shipping container number EITU1423171 (the "3171 Container") from the Port of Los Angeles, California, which was scheduled to be inspected by CBP at the Price Centralized Examination Station ("CBP Examination Station 1") in Carson, California.

<u>Overt Act No. 4</u>:   On August 24, 2023, defendant ZHENG sent a text message to defendant ROSALES listing the container number for the 3171 Container.

<u>Overt Act No. 5</u>:   On August 24, 2023, in response to the text message referenced in <u>Overt Act No. 4</u>, defendant ROSALES messaged defendant ZHENG, "I will send to truck driver."

<u>Overt Act No. 6</u>:   On August 24, 2023, defendant CASTILLO PEREZ picked up the 3171 Container from the Port of Los Angeles and delivered it to a location that was not authorized by CBP so that one or more co-conspirators could remove contraband from the container before it was inspected by CBP.

<u>Overt Act No. 7</u>:   On August 24, 2023, one or more co-conspirators broke the security seal on the 3171 Container, unloaded the contraband from inside, and then affixed a fraudulent security seal on the container to conceal the co-conspirators' illegal activity.

<u>Overt Act No. 8</u>:   On August 24, 2023, defendant CASTILLO PEREZ drove the 3171 Container to CBP Examination Station 1 so the container could be inspected by CBP.

<u>Overt Act No. 9</u>:   On August 25, 2023, in text messages, defendant ZHENG instructed defendant HOFFMAN to have defendant ROSALES pick up shipping container number TCLU8654599 (the "599 Container") from the Port of Los Angeles, which was scheduled to be

inspected at CBP Examination Station 1.

Overt Act No. 10:  On August 25, 2023, in text messages, defendant ROSALES told defendant CASTILLO PEREZ to pick up the 599 Container from the Port of Los Angeles.

Overt Act No. 11:  On August 29, 2023, a co-conspirator picked up the 599 Container from the Port of Los Angeles and drove the container to a warehouse located in the City of Industry that was not a location authorized by CBP.

Overt Act No. 12:  On August 29, 2023, one or more co-conspirators broke the security seal on the 599 Container, unloaded the contraband from inside, and then affixed a fraudulent security seal on the container to conceal the co-conspirators' illegal activity.

Overt Act No. 13:  On August 29, 2023, in text messages to defendant ZHENG using an encrypted messaging application, defendant ROSALES confirmed receipt of the 599 Container and sent photographs of the 599 Container and the container's yellow security seal.

Overt Act No. 14:  On August 29, 2023, a co-conspirator drove the 599 Container to CBP Examination Station 1 for the contents of the 599 Container to be inspected by CBP.

Overt Act No. 15:  On September 6, 2023, defendants WANG and ROSALES discussed, via text message, an upcoming shipping container diversion.  In a text message, defendant WANG told defendant ROSALES the following: "I just realized we don't even have the seal lol," and "We need to make sure do we need to swap or no."

Overt Act No. 16:  On September 12, 2023, defendant ROSALES texted defendant WANG: "Is there a seal for this one?"

Overt Act No. 17:  On September 12, 2023, in response to the

8

text message reference in Overt Act No. 16, defendant WANG confirmed to defendant ROSALES that the co-conspirators would receive the counterfeit security seal "this week."

Overt Act No. 18: On September 14, 2023, defendant WANG instructed defendant ROSALES to pick up shipping container number GCXU5622150 (the "2150 Container") from the Port of Los Angeles, which was scheduled to be inspected at CBP Examination Station 1 in Carson, California.

Overt Act No. 19: On September 14, 2023, defendant WANG sent text messages to defendant ROSALES about the 2150 Container, including the container number and the unique security seal number, stating: "this one urgent."

Overt Act No. 20: On September 14, 2023, after receiving the text messages referenced in Overt Act No. 19, defendant ROSALES sent a text message containing the 2150 Container number to defendant CASTILLO PEREZ.

Overt Act No. 21: On September 15, 2023, defendant CASTILLO PEREZ texted ROSALES asking if they were going to be removing the container that day. ROSALES responded in Spanish stating "[T]here is no seal yet, I'm waiting for the message," and "I don't have the lock yet."

Overt Act No. 22: On September 15, 2023, after sending the text message referenced in Overt Act No. 21, defendant ROSALES sent a text message to defendant HOFFMAN, stating, "Text sonic [defendant ZHENG], container is on the way."

Overt Act No. 23: On September 15, 2023, defendant HOFFMAN sent the following text message to defendant ROSALES: "I just sent that over to sonic and Peter. Sonic said he will call the warehouse

manager to have the goods ready and the workers ready. He wants to make sure if you have seal. I told him you do."

   Overt Act No. 24:  On September 15, 2023, in response to defendant CASTILLO PEREZ asking defendant ROSALES if he had the counterfeit security seal for the 2150 Container, defendant ROSALES confirmed that he did.

   Overt Act No. 25:  On September 15, 2023, a co-conspirator picked up the 2150 Container from the Port of Los Angeles and drove the container to a warehouse located in the City of Industry that was not a location authorized by CBP.

   Overt Act No. 26:  On September 15, 2023, one or more co-conspirators broke the security seal on the 2150 Container, unloaded the contraband from inside, and then affixed a fraudulent security seal on the container to conceal the co-conspirators' illegal activity.

   Overt Act No. 27:  On September 15, 2023, after the co-conspirators removed the contraband from the 2150 Container, a co-conspirator drove the 2150 Container to CBP Examination Station 1 so it could be inspected by CBP.

   Overt Act No. 28:  On November 21, 2023, defendant WANG instructed ROSALES to pick up shipping container number AMCU9329284 (the "9284 Container") from the Port of Los Angeles, which was scheduled to be inspected at CBP Examination Station 1 in Carson, California.

   Overt Act No. 29:  On November 21, 2023, in text messages, defendant WANG sent defendant ROSALES the 9284 Container's container number and the unique security seal number.

   Overt Act No. 30:  On November 21, 2023, after receiving the

text messages referenced in Overt Act No. 29, defendant ROSALES sent a text message to defendant CASTILLO PEREZ containing the container number for the 9284 Container.

Overt Act No. 31:  On November 21, 2023, in text messages, defendant HOFFMAN told defendant ROSALES to drop off the 9284 Container at an address located in the City of Industry, which was not a location authorized by CBP.

Overt Act No. 32:  On November 21, 2023, in response to the text messages referenced in Overt Act No. 31, defendant ROSALES told defendant HOFFMAN, "Don't ever put this address on the paper work, always put a different one."

Overt Act No. 33:  On November 27, 2023, a co-conspirator picked up the 9284 Container from the Port of Los Angeles and delivered it to a warehouse located in the City of Industry that was not a location authorized by CBP.

Overt Act No. 34:  On November 27, 2023, one or more co-conspirators broke the security seal on the 9284 Container, unloaded the contraband from inside, and then affixed a fraudulent security seal on the container to conceal the co-conspirators' illegal activity.

Overt Act No. 35:  On November 27, 2023, after unknown co-conspirators removed contraband from the 9284 Container, a co-conspirator drove the 9284 Container to CBP Examination Station 1 so that it could be inspected by CBP.

Overt Act No. 36:  On December 22, 2023, in text messages to defendant ROSALES, defendant WANG told defendant ROSALES to pick up shipping container number FSCU8099239 (the "9239 Container") from the Port of Los Angeles, which was scheduled to be inspected at CBP

Examination Station 1 in Carson, California.

**Overt Act No. 37:** On December 22, 2023, in text messages, defendant WANG gave defendant ROSALES instructions for picking up the 9239 Container from the Port of Los Angeles.

**Overt Act No. 38:** On December 22, 2023, defendant CASTILLO PEREZ picked up the 9239 Container from the Port of Los Angeles and delivered it to a warehouse located in the City of Industry that was not a location authorized by CBP.

**Overt Act No. 39:** On December 22, 2023, one or more co-conspirators broke the security seal on the 9239 Container, unloaded the contraband from inside, and then affixed a fraudulent security seal on the container to conceal the co-conspirators' illegal activity.

**Overt Act No. 40:** On December 22, 2023, after the co-conspirators removed contraband from inside the 9239 Container, defendant CASTILLO PEREZ drove the 9239 Container to CBP Examination Station 1 so the container could be inspected by CBP.

**Overt Act No. 41:** On December 29, 2023, in a text message thread by and between defendants WANG, LIU, ROSALES and CASTILLO PEREZ, defendant LIU texted the group the shipping container number FFAU1777718 (the "7718 Container").

**Overt Act No. 42:** On December 29, 2023, less than a minute after the text message referenced in Overt Act No. 41, defendant WANG sent a text message to the group, stating: "I need this container payment invoice. In China they paid already. Andy. If you paid please provide the payment receipt."

**Overt Act No. 43:** On December 29, 2023, defendant WANG sent a text message to the group text referenced in Overt Act No. 42,

stating "hi bro – we just confirmed China – I'll pay you right now - $4725."

<u>Overt Act No. 44</u>:  On December 29, 2023, in response to the text message referenced in <u>Overt Act No. 43</u>, defendant LIU sent the group a screenshot of a wire confirmation payment for $4,725 paid to Castle Express LLC, a company registered under defendant CASTILLO PEREZ's wife's name.

<u>Overt Act No. 45</u>:  On February 23, 2024, defendant GOMEZ instructed a co-conspirator to pick up shipping container number FBLU0025608 (the "5608 Container") from the Port of Los Angeles, which was scheduled to be inspected at CBP Examination Station 1 in Carson, California.

<u>Overt Act No. 46</u>:  On February 23, 2024, a co-conspirator picked up the 5608 Container from the Port of Los Angeles and drove it to a warehouse in the City of Industry that was not a location authorized by CBP.

<u>Overt Act No. 47</u>:  On February 23, 2024, one or more co-conspirators broke the security seal on the 5608 Container, unloaded the contraband from inside, and then affixed a fraudulent security seal on the container to conceal the co-conspirators' illegal activity.

<u>Overt Act No. 48</u>:  On February 23, 2024, after the co-conspirators removed contraband from the 5608 Container, a co-conspirator drove the 5608 Container to CBP Examination Station 1 so it could be inspected by CBP.

<u>Overt Act No. 49</u>:  On March 27, 2024, in text messages, defendant LIN communicated with a co-conspirator about shipping container number TCNU6659916 (the "9916 Container"), including

sending the co-conspirator a photo depicting a broken security seal.

Overt Act No. 50:  On March 28, 2024, defendant GOMEZ picked up the "9916 Container" from the Port of Los Angeles and drove it to a warehouse located in the City of Industry, to meet with defendant WANG.

Overt Act No. 51:  On March 28, 2024, after meeting with defendant WANG, defendant GOMEZ drove the 9916 Container to the Darius Court Contraband Warehouse located in the City of Industry, California.

Overt Act No. 52:  On March 28, 2024, after taking the 9916 Container to the Darius Court Contraband Warehouse, defendant GOMEZ drove the 9916 Container to CBP Examination Station 1 for CBP inspection.

Overt Act No. 53:  On March 28, 2024, to conceal the co-conspirators' activities, defendant GOMEZ provided materially false information to the CBP Official at CBP Examination Station 1.  Among other things, defendant GOMEZ falsely stated that the container's security seal had broken off when he backed up his truck holding the container, and that he had replaced it with one of his personal seals to secure it.  Defendant GOMEZ also falsely stated to the CBP official that he had not picked up the 9916 Container from the Port of Los Angeles himself.

Overt Act No. 54:  On May 31, 2024, using an encrypted messaging application, defendant LIN told a co-conspirator that he had cleared out some cargo from one of the warehouses because it had begun to release a foul odor.  Defendant LIN also asked the co-conspirator how many refrigerants were in the shipment, noting that he had already "presold" 200 bottles of the refrigerant.

<u>Overt Act No. 55</u>:  Beginning on an unknown date and continuing until at least June 25, 2024, defendant WANG operated and managed the Chestnut Contraband Warehouse to store, conceal, and sell contraband the co-conspirators smuggled into the United States.  On June 25, 2024, inside the Chestnut Contraband Warehouse, defendant WANG and others known an unknown possessed over twenty million dollars' worth of counterfeit items including counterfeit shoes, perfume, and luxury handbags, apparel, and watches.

COUNT TWO THROUGH EIGHT

[18 U.S.C. §§ 549, 2(a), 2(b)]

[DEFENDANTS ZHENG, WANG, ROSALES, CASTILLO PEREZ, HOFFMAN, and GOMEZ]

On or about the dates listed below, in Los Angeles County, within the Central District of California, defendants WEIJUN ZHENG, also known as ("aka") "Sonic," HEXI WANG, JESSE JAMES ROSALES, DANIEL ACOSTA HOFFMAN, aka "Slinks," ANDY ESTUARDO CASTILLO PEREZ, and MARCK GOMEZ, each aiding and abetting the other, willfully and without authority removed and caused the removal of a customs seal, namely, the seal on the containers listed below, and which at all relevant times was in the custody of United States Customs and Border Protection.

| COUNT | DATE | CONTAINER | DEFENDANT(S) |
|---|---|---|---|
| TWO | August 24, 2023 | EITU1423171 | ZHENG, ROSALES, and CASTILLO PEREZ |
| THREE | August 29, 2023 | TCLU8654599 | ZHENG, ROSALES, and HOFFMAN |
| FOUR | September 15, 2023 | GCXU5622150 | ZHENG, WANG, ROSALES, CASTILLO PEREZ, and HOFFMAN |
| FIVE | November 27, 2023 | AMCU9329284 | WANG, ROSALES, and HOFFMAN |
| SIX | December 22, 2023 | FSCU8099239 | WANG, ROSALES, and CASTILLO PEREZ |
| SEVEN | February 23, 2024 | FBLU0025608 | GOMEZ |
| EIGHT | March 28, 2024 | TCNU6659916 | WANG and GOMEZ |

16

COUNT NINE THROUGH FIFTEEN

[18 U.S.C. §§ 545, 2(a), 2(b)]

[DEFENDANTS ZHENG, WANG, ROSALES, CASTILLO PEREZ, HOFFMAN, and GOMEZ]

On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants WEIJUN ZHENG, also known as ("aka") "Sonic," HEXI WANG, JESSE JAMES ROSALES, DANIEL ACOSTA HOFFMAN, aka "Slinks," ANDY ESTUARDO CASTILLO PEREZ, and MARCK GOMEZ, each aiding and abetting the other, fraudulently, knowingly, and willfully caused merchandise to be imported and brought into the United States contrary to law, and received, concealed, and facilitated the transportation and concealment of such merchandise, knowing the merchandise to have been imported and brought into the United States contrary to law, by, among other things, knowingly failing to make the required declaration, failing to obtain the required authorization to import such merchandise, and failing to transport such merchandise through designated ports of entry into the United States.

| COUNT | DATE | MERCHANDISE | DEFENDANT(S) |
|---|---|---|---|
| NINE | August 24, 2023 | Container No. EITU1423171 shipped from China and received at the Port of Los Angeles, in the Central District of California | ZHENG, ROSALES, and CASTILLO PEREZ |
| TEN | August 29, 2023 | Container No. TCLU8654599 shipped from China and received at the Port of Los Angeles, in the Central District of California | ZHENG, ROSALES, and HOFFMAN |

| | | | |
|---|---|---|---|
| ELEVEN | September 15, 2023 | Container No. GCXU5622150 shipped from China and received at the Port of Los Angeles, in the Central District of California | ZHENG, WANG, ROSALES, and HOFFMAN |
| TWELVE | November 27, 2023 | Container No. AMCU9329284 shipped from China and received at the Port of Los Angeles, in the Central District of California | WANG, ROSALES, and HOFFMAN |
| THIRTEEN | December 22, 2023 | Container No. FSCU8099239 shipped from China and received at the Port of Los Angeles, in the Central District of California | WANG, ROSALES, and CASTILLO PEREZ |
| FOURTEEN | February 23, 2024 | Container No. FBLU0025608 shipped from China and received at the Port of Los Angeles, in the Central District of California | GOMEZ |
| FIFTEEN | March 28, 2024 | Container No. TCNU6659916 shipped from China and received at the Port of Los Angeles, in the Central District of California | WANG and GOMEZ |

FORFEITURE ALLEGATION

[18 U.S.C. §§ 982 and 545]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982 and 545, and Title 28, United States Code, Section 2461(c), in the event of any of any defendant's conviction of the offenses set forth in any of Count One, and Counts Nine through Fifteen of this Indictment.

2. Any defendant so convicted shall forfeit to the United States the following:

(a) All right, title, and interest in any and all property, real or personal constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of each such offense;

(b) Any and all merchandise introduced into the United States in violation of Title 18, United States Code, Section 545, or the value thereof; and

(c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof:

(a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/_____
Foreperson

E. MARTIN ESTRADA
United States Attorney

*[signature]*

DAVID T. RYAN
Assistant United States Attorney
Chief, National Security Division

IAN V. YANNIELLO
Assistant United States Attorney
Chief, Terrorism and Export
Crimes Section

COLIN S. SCOTT
Assistant United States Attorney
Terrorism and Export Crimes
Section

AMANDA B. ELBOGEN
Assistant United States Attorney
Terrorism and Export Crimes
Section